73 N.J. Super. 40 (1962)
179 A.2d 161
ANN A. QUINLAN, PETITIONER-RESPONDENT,
v.
THE BOARD OF EDUCATION OF THE TOWNSHIP OF NORTH BERGEN, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 1961.
Decided March 9, 1962.
*42 Before Judges CONFORD, FREUND and LABRECQUE.
Mr. Joseph V. Cullum argued the cause for the respondent-appellant.
Mr. Melvin Gittleman argued the cause for the petitioner-respondent (Messrs. Capone & Gittleman, attorneys).
The opinion of the court was delivered by LABRECQUE, J.S.C. (temporarily assigned).
This is an appeal from a determination and judgment of the State Board of Education ordering the reinstatement of petitioner Ann A. Quinlan as a clerk in the employ of respondent Board of Education of the Township of North Bergen.
On December 9, 1948 petitioner was appointed "a clerk in the Public School System" by the Board of Education of the Township of North Bergen. She continued to serve in that capacity until January 3, 1956 when, by resolution dated December 8, 1955 she was appointed "Clerk-Attendance Officer in the Public School System." On *43 February 1, 1958 the then board adopted a resolution dismissing her "for reasons of economy." In the resolution she was referred to as an "attendance officer in the Public School System" rather than as a clerk-attendance officer.
Petitioner subsequently filed a petition of appeal to the Commissioner of Education alleging that her appointment as clerk-attendance officer was supplemental to and not in substitution for her original appointment as clerk, and that thereafter she continued to perform the duties of a clerk as well as those of an attendance officer. The legal significance of her contention is that as a holder of a "secretarial or clerical position" for three years she would enjoy tenure during good behavior, N.J.S.A. 18:6-27, whereas an attendance officer has no such tenure. She alleged that her dismissal was not made in good faith for reasons of economy but was in reprisal for her activity and support of a referendum to change the defendant board of education from a chapter 6 to a chapter 7 board, and thus was motivated by political considerations. She prayed that the resolution dismissing her be set aside as illegal and contrary to law, that she be reinstated to the position of clerk, and that her tenure rights be fixed and declared.
A hearing was conducted before the Assistant Commissioner of Education at which the plaintiff was the sole witness. She testified that she was appointed a clerk in 1948 and as a clerk-attendance officer in December 1955, effective January 3, 1956. She performed her duties until discharged on February 1, 1958. She asserted she worked both as a clerk and as an attendance officer. She estimated her work was divided "half and half." She did any clerical work she was asked to do. On one occasion she substituted for two days when another clerk was ill. She would often be called by Mr. Egan, her supervisor, to look up records in the vault or to locate high school records. She helped a Miss Gilligan in the office.
In support of her claim that reasons of economy did not motivate her dismissal, she testified that in the late fall of *44 1957 she had engaged in the campaign to change the board of education from a chapter 6 to a chapter 7 board. She offered three resolutions, two of them dated August 12, 1958 appointing two additional clerks (principal) in the school system, and one dated September 12, 1957, appointing a clerk in the office of the Superintendent of Schools. It was further made to appear that she had previously applied for a position as attendance officer; that after her appointment as clerk-attendance officer she had received a schedule referring to her as an attendance officer; that she was on the same salary schedule as other attendance officers in the system; that she had joined in a request for an increase in the attendance officers' salaries, and that in a letter to the School Superintendent she had signed as "Attendance Officer, Lincoln School No. 5." She asserted that she considered her appointment of December 8, 1955 as "clerk-attendance officer" to be a promotion.
The Commissioner of Education concluded that in order for petitioner to prevail she was required to show that her duties were preponderately those of a clerk, and in the absence of such proof he held that she was not protected by tenure. He thus found it unnecessary to consider the contention that her dismissal was not in good faith for reasons of economy. She thereupon appealed to the State Board of Education, which reversed the Commissioner and ordered plaintiff "reinstated as a clerk as of February 1, 1958, at such salary as she was receiving as clerk prior to her appointment as clerk-attendance officer, effective January 3, 1956." The present appeal followed.
The two questions presented for our determination are:
(1) Whether petitioner had tenure of office at the time of her discharge, and
(2) Whether in such case she was discharged in good faith for reasons of economy.
Although not conceded by the respondent board, we have no difficulty in concluding that at the time of her appointment as clerk-attendance officer, petitioner had tenure of *45 office in her position as clerk. N.J.S.A. 18:6-27 gives tenure during good behavior and efficiency to all persons holding clerical positions under any board of education after three consecutive years of employment. She had thus qualified for tenure by her service as clerk from 1948 to 1955. Thereafter the board was precluded from dismissing her except for inefficiency, incapacity, unbecoming conduct or other just cause, and then only after written charges and a hearing thereon. We therefore turn to consideration of her status at the time of her discharge.
It is conceded that R.S. 18:14-43, providing for tenure for attendance officers for city school districts, did not apply to petitioner, but it is asserted that the tenure rights which she had earned as a clerk were not terminated by her subsequent appointment to the hybrid position of clerk-attendance officer; that such appointment was not in substitution for her original appointment as clerk, and thus that her tenure as a clerk continued notwithstanding.
On the contrary, respondent board contends that even though petitioner may have had tenure in her position as a clerk, her acceptance of the appointment as clerk-attendance officer and her subsequent acquiescence in respondent's alleged treatment of her as an attendance officer, amounted to a relinquishment of her status as a clerk with its concomitant tenure of office.
On this question the State Board determined factually that she had been serving as both clerk and attendance officer and therefore continued to retain her tenure as a clerk. In so doing the board held:
"In our view, the record indicates that from the time of her appointment as a clerk-attendance officer until her discharge, petitioner served as both a clerk and an attendance officer. If she functioned primarily as an attendance officer, she did so under orders, and not of her own volition as such. Her testimony was to the effect that `whatever I was asked to do in the school system, I did.' The predominance of her function as an attendance officer was not a situation of her making, but depended upon the decision of her superiors. In her dual official capacity, she could have fulfilled the *46 duties of either or both offices, depending upon her orders. She was not appointed as an attendance officer, but as a clerk-attendance officer and when she accepted the appointment, she manifested herself as being ready, willing and able to perform in either or both offices. * * * By accepting the appointment, she agreed not only to undertake the duties of an attendance officer, but also to continue to perform the duties of a clerk. The manner in which her working time was allotted to the two positions was not her decision or concern. The Board could have acceded to her express request by appointing her as an attendance officer exclusively. But it chose to preserve her status as a clerk, and to give her the additional post of attendance officer. If most or all of her subsequent activity concerned the latter office, she was simply following her instructions. She might as readily have spent all of her time as a clerk if her superiors had felt that her services were more urgently required in that capacity. Thus, within the limitations of her instructions, she continued to serve as a clerk. Upon her dismissal as an attendance officer, she was entitled to resume her clerical duties by virtue of her tenure rights in that position."
In reviewing the determination of an administrative agency our power to make independent findings of fact where necessary is beyond question. R.R. 4:88-13, 1:5-4(b) and 2:5; Cullum v. Bd. of Education of Tp. of North Bergen, 15 N.J. 285, 294 (1954). But the determination of the agency carries with it the presumption of correctness, and on review of the facts we will not substitute our independent judgment for that of the board where its findings are supported by substantial evidence, i.e., such evidence as a reasonable mind might accept as adequate to support a conclusion. In re Public Service Electric & Gas Co., 35 N.J. 358, 376 (1961); In re Greenville Bus Co., 17 N.J. 131 (1954); Maple Hill Farms, Inc. v. Division of New Jersey Real Estate Comm., 67 N.J. Super. 223, 226-227 (App. Div. 1961). It is not our function to weigh the evidence, to determine the credibility of witnesses, to draw inferences and conclusions from the evidence, and to resolve conflicts therein. Hornauer v. Division of Alcoholic Beverage Control, 40 N.J. Super. 501, 504 (App. Div. 1956). When an administrative agency has acted within its authority, its actions will not generally be upset unless there is an affirmative showing that its judgment *47 was arbitrary, capricious or unreasonable. East Paterson v. Civil Service Dept. of N.J., 47 N.J. Super. 55, 65 (App. Div. 1957). Generally, the test of factual finality is whether the finding of the agency is supported by substantial evidence. In re Larsen, 17 N.J. Super. 564, 576 (App. Div. 1952) (concurring opinion). Our review of the record below should therefore be confined within the pattern of these decisions.
We conclude that there was adequate support for the State Board's finding that petitioner had tenure in her position as a clerk which was not terminated by her subsequent appointment as clerk-attendance officer. Her initial appointment as a clerk, her acquisition of tenure and her subsequent advance to clerk-attendance officer were all established without serious contradiction. Her assertion that thereafter her duties differed from those of the other attendance officers and that she performed the duties of a clerk as well as those of an attendance officer, stands uncontradicted either by her superiors or her co-workers. The record before us is devoid of any evidence that it was the intention or in contemplation of either the petitioner or the board at the time of her 1955 appointment that she should be divested of tenure or be considered the holder of a position not attended by tenure. Prior to her appointment, she had applied for the position of attendance officer, which did not carry tenure. It would have been a simple matter to have appointed her to that position, if it was intended that that was the position she was to fill. But this was not done, and her appointment as a clerk-attendance officer bespeaks an intention by the board in office at the time that she should retain the employment incidents of a clerical position and not be relegated exclusively to those of the unqualified position of attendance officer. We are not here confronted with a situation where an employee under tenure leaves her position to accept one which carries no tenure. Lange v. Bd. of Ed. of Borough of Audubon, 26 N.J. Super. 83 (App. Div. 1953). It rather appears that *48 the board elected to retain its right to have her continue to perform clerical duties as well as those of an attendance officer, the board to determine the proportion of each. By accepting the appointment she indicated her willingness to perform in either or both capacities. She could not thereafter be deprived of her tenure by the unilateral action of the board. Cf. Seidel v. Bd. of Education of Ventnor City, 110 N.J.L. 31 (Sup. Ct.), affirmed 111 N.J.L. 240 (E. & A. 1933).
The State Board was not impressed, nor are we, by the fact that petitioner was listed in a work schedule for attendance officers dated December 17, 1957, or that she was referred to in a resolution of the board on December 12, 1957 as an attendance officer. By both of these purely administrative actions the attendance duties were distributed among those acting as attendance officers, including the petitioner. That she would be referred to as an attendance officer in such circumstance was wholly natural. The same reasoning would apply to a letter by her referring to her attendance duties or in connection with that phase of her position, in which she referred to herself as an attendance officer.
Respondent board urges that the State Board erroneously required it to assume the burden of proof as to petitioner's tenure. The board found that it was not disputed that petitioner had attained tenure as a clerk in 1955. After finding that she had served both as a clerk and as an attendance officer thereafter, it went on to say:
"* * * Respondent Board argues that petitioner's testimony was `vague' and that it is the petitioner's burden to establish her case by a clear preponderance of the evidence. We deem her testimony to establish, at least, prima facie support for her contention that she actually performed the duties of a clerk since working under the title of clerk-attendance officer. We further feel that, in the context of a claim by the Board of Education that one with conceded tenure as a clerk has in fact `relinquished' or `waived' that tenure, the burden of proof should be upon the Board of Education and not upon the petitioner. As the Commissioner observed in his opinion below, the superintendent, principals and other officials who might have testified *49 as to her clerical duties were not called. We think that it was the burden of the respondent Board to go forward and produce testimony of such officials or others who might have been able to controvert the testimony of the petitioner that she continued to perform clerical duties after she held the title of clerk-attendance officer." (Emphasis added)
The respondent relies, in its brief, upon the italicized portion of the foregoing excerpt.
The rule applicable required the plaintiff to carry the burden of proof of such facts as were necessary to entitle her to the relief prayed for. Kopera v. West Orange Bd. of Education, 60 N.J. Super. 288, 297 (App. Div. 1960); 42 Am. Jur., Public Administrative Law, § 131, p. 466 (1942); cf. Chirichella v. Dept. of Civil Service, 31 N.J. Super. 404, 409-410 (App. Div. 1954). This duty of persuasion upon the whole case never shifts, Hughes v. Atlantic City & S.R.R. Co., 85 N.J.L. 212, 216 (E. & A. 1914), although in another sense the duty of going forward with evidence may shift as one side or the other satisfies the judge that the evidence suffices to make out a prima facie case in his favor. Id.; 9 Wigmore, Evidence (3d ed. 1940), § 2487, p. 278; 20 Am. Jur., Evidence, § 133, p. 136 (1939).
We are satisfied from the record that the parties, the Commissioner of Education, and the State Board recognized this rule. In any event, respondent was in no wise prejudiced by the statement in question. R.R. 1:5-3(b), 2:5; Nordco, Inc. v. State, 43 N.J. Super. 277 (App. Div. 1957); J. Abbott & Son, Inc. v. Holderman, 46 N.J. Super. 46 (App. Div. 1957). The board was merely pointing up the fact that respondent, which had it within its power to produce testimony in contradiction of petitioner, had failed to do so. We are satisfied that the quality of petitioner's proofs was adequate to meet the burden of proof imposed upon her.
Respondent next urges that in finding that petitioner had tenure as a clerk, the State Board gave undue consideration to her title and disregarded the duties required of her, citing *50 Phelps v. State Board of Education, 115 N.J.L. 310 (Sup. Ct. 1935), affirmed 116 N.J.L. 412 (E. & A. 1936), and Lange v. Bd. of Ed. of Borough of Audubon, supra (26 N.J. Super., at p. 83). We find neither of these cases to be controlling. In Phelps the teacher-clerk was found to have been performing only clerical work, while in Lange the petitioner had not been employed as a principal, in which position she claimed tenure, from 1927 to 1951. In the present case petitioner continued to perform clerical duties following her appointment as clerk-attendance officer. We are satisfied that, in the decision appealed from, the nature of the work done was adequately considered and was a crucial factor in the board's determination that the petitioner had not lost her tenure as a clerk. Cf. Viemeister v. Bd. of Education of Prospect Park, 5 N.J. Super. 215 (App. Div. 1949).
It is next urged that in holding that petitioner continued to have tenure, the State Board failed to give due weight to the factual findings of the Commissioner of Education, citing Harrison v. State Board of Education, 134 N.J.L. 502 (Sup. Ct. 1946). That case involved a factual review by the Supreme Court based upon the record below and affirmed the court's duty to make an independent determination of the facts while giving consideration to the opportunity of the trial body to observe the parties and their witnesses. Petitioner concedes that the Assistant Commissioner of Education who heard the case was appointed pursuant to N.J.S.A. 18:3-2(e), but denies that the Commissioner's decision of February 10, 1960, which had been appealed from, was actually his. We need not pass upon this latter contention since we find no merit to respondent's argument in any event. We do not read the statute as requiring the State Board to be bound by the factual findings of the Commissioner of Education, although when the factual proofs are produced before him, due consideration should be accorded the fact that he had an opportunity to observe the parties and their witnesses. Cf. Harrison v. State Board of Education, supra, at p. 504; *51 Laba v. Newark Board of Education, 23 N.J. 364, 382 (1957). Appeals to the State Board are part of the legislative plan whereby it is made the final administrative tribunal upon which rests the ultimate duty of deciding school law controversies. In re Masiello, 25 N.J. 590, 605 (1958). Thus, it is not precluded from making its own independent findings of fact.
We further find that, far from disregarding the factual findings of the Commissioner, the State Board gave them due consideration. It differed with him only as to the rule of law applicable. Thus in his decision he held:
"* * * to prevail in this matter, petitioner must show that her duties are preponderately those of a clerk. Accordingly the crucial question is whether she is primarily an attendance officer or a clerk."
He thereupon held that she was primarily doing the work of an attendance officer and hence was not entitled to tenure.
The State Board in its decision held that while her clerical duties were not the major part of her work, the restrictive rule invoked by the Commissioner did not apply, and that since her uncontradicted testimony established that she had been performing duties both as a clerk and as an attendance officer she had not relinquished or waived her previously vested tenure incident to her holding of her clerical position over a three-year period. We are satisfied as to the correctness of this legal conclusion. To hold otherwise would be to permit a local school board to control the rights of employees who had tenure by restricting the amount of work covered by tenure which it assigned to them. Such is not the purpose or intendment of the statute nor is it consistent with the liberal support which this and other statutes granting tenure should be accorded. Cf. Viemeister v. Bd. of Education of Prospect Park, supra (5 N.J. Super., at p. 218). We rather take the view that where an employee holding a position covered by tenure is promoted to a position which encompasses his former duties and additionally requires the performance of services which are not *52 covered by tenure, and he thereafter continues to render services in both capacities, his right in his tenure position continues until terminated in accordance with the statute. N.J.S.A. 18:6-27.
It is next urged that the decision of the State Board is a nullity because one of the members who voted with the majority was not present at the oral argument which preceded the adoption of its decision. Pursuant to N.J.S.A. 18:3-15 the Board referred consideration of the appeal before it to its legal committee. The committee thereafter submitted its report; copies were furnished to the parties and a date was fixed for hearing and oral argument on the report. It is conceded that Mr. Slater, one of the members, did not attend the oral argument. He was, however, present and voted with the majority when the Board's decision was adopted by a vote of 8 to 1. While respondent concedes that the statute itself contains no requirement that a hearing on the report be held, it relies upon City of Asbury Park v. Dept. of Civil Service, 17 N.J. 419 (1955) and Redcay v. State Board of Education, 128 N.J.L. 281 (Sup. Ct. 1942), as holding that when such a hearing is had, only those present at the hearing may vote.
We find neither of the cases cited to be applicable. In Redcay the hearing of the appeal had been referred to the law committee of the State Board and it had been heard by three of the four members thereof. It was conceded that at the meeting of the board at which the appeal was decided, six of the ten members were present. Of these, two had been members of the law committee which had heard the appeal; one had been a member of the law committee but had not heard the appeal, although he had studied the report and concurred therein; and the remaining three members had neither heard argument on the case nor made any study of the briefs or proofs. A somewhat similar division took place at the motion to reopen the board's prior decision. In remanding the case to the board the court held, at page 285:
*53 "The value or helpfulness of the recommendations and conclusions of the `Law Committee' could only be determined if and when the members of the State Board who voted to adopt them had in the exercise of fair play read and considered the proofs, the briefs and oral arguments made."
In City of Asbury Park v. Dept. of Civil Service, supra, the court was dealing with the propriety of the hearing procedure followed by the Civil Service Commissioner. There the testimony of some of the witnesses had been heard by one member of the commission while that of the remaining witnesses had been taken before two other members of the commission. The court there observed that the controlling statutes, R.S. 11:1-10 and 11:25-2, required that the hearing be conducted by the full commission, or at least by a quorum and held the decision to be a nullity since none of the three commissioners who participated had heard all of the testimony.
Here the State Board did not take testimony. The record below is devoid of any concession by the petitioner or of any proof which would sustain a finding that Slater had not read and considered the proofs and the briefs filed. Aside from this, respondent suffered no prejudice by Slater's participation since the vote was 8 to 1 and no question is raised as to the validity of the participation of the remaining seven members. We are not impressed by respondent's suggestion that if Slater had been present at the oral argument, he might have been persuaded as to the validity of respondent's claim, and thus might have, in turn, persuaded his colleagues at the final vote, and we find no authority for it. All that was required was that the report of the legal committee be furnished to the parties, and that they be afforded an opportunity to object to it and to be heard thereon. In re Masiello, supra, 25 N.J., at p. 605. Of the total board membership, nine heard the oral argument and seven of these, in addition to Slater, adopted the decision before us. This constituted an adequate compliance with the requirements of fair play and due process.
*54 It is finally urged that the State Board's finding that petitioner was not dismissed for reasons of economy is invalid because based upon its erroneous assumption that the burden of proof thereon rested upon the respondent. It held:
"The local Board also claims that Mrs. Quinlan's position was abolished for reasons of economy. This is a plea of `confession and avoidance' and, again, it is the burden of the Board to sustain it. Hefter v. Bradbury [Bradway] (Sup. Ct. 1935) 115 N.J.L. [81] 82 at 83 [178 A. 199]."
The rule of law applicable was to the contrary and the burden of proof as to dismissal in bad faith was at all times upon the petitioner. Chirichella v. Dept. of Civil Service, supra, 31 N.J. Super., at p. 408; Greco v. Smith, 40 N.J. Super. 182, 189 (App. Div. 1956). We conclude, however, that by this holding no error prejudicial to the respondent resulted. R.R. 1:5-3(b), 2:5; Nordco, Inc. v. State, supra; J. Abbott & Son, Inc. v. Holderman, supra. Petitioner more than sustained the burden of proof required of her. Her testimony was uncontradicted to the effect that, shortly prior to her dismissal, she had taken part in a political campaign to abolish the respondent as a chapter 6 board and substitute for it a chapter 7 board. It was conceded that during the early part of that fall the board had hired another clerk, and that six months following the petitioner's discharge it had hired two additional clerks. These facts tended to negative any claim that the dismissal was genuinely for reasons of economy, assuming, arguendo, that the "reasons of economy" cited had reference to petitioner's duties both as a clerk and as an attendance officer. As to this we are by no means certain, especially in view of the failure of respondent to set it up specifically in its filed answer or to explain it testimonially. In an issue involving the board's good faith in dismissing petitioner for reasons of economy, and considering the prima facie showing she made in that regard, we cannot help but attribute significance *55 to the complete failure of the board to have its representatives take the stand and explain the alleged economy basis of the dismissal, especially where it apparently took place at the reorganization meeting of the board, and others were hired as clerks in the school system both before and after her dismissal. We are constrained to hold that the State Board's conclusion that the dismissal was not in good faith for reasons of economy was supported by the uncontradicted evidence adduced.
Affirmed.